**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Blum, et al., | No. CV-20-00409-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Banner Health, et al., | |
| Defendants. | |

Plaintiffs Edward and Nancy Blum have sued Defendants Banner Health d/b/a Banner Boswell Medical Center and d/b/a Banner Del. E. Webb Medical Center (collectively "Banner") under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, alleging that Banner Del E. Webb Medical Center ("Banner Del Webb") failed to screen for or stabilize Mr. Blum's emergency medical condition before discharging him. (Doc. 1. at 9-12; Doc. 35; Doc. 43 at 2-3.)  At issue is Banner's motion for summary judgment (Doc. 83), which is fully briefed (Docs. 84, 85) and will be granted.[1]

**I.   Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the

---

[1] Banner's request for oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the summary judgment motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

**II.   Undisputed Facts**

Banner has satisfied the first element of the summary judgment test by showing that there is no genuine dispute of material fact. Consistent with Federal Rule of Civil Procedure 56(c) and Paragraph 7(c) of the Scheduling Order (Doc. 45 at 4), Banner details all facts material to its defense in its motion, and it supported those factual assertions with citations to evidence in the record. In their response brief, the Blums failed to controvert any of Banner's factual assertions with citations to evidence in the record. Accordingly, pursuant to Rule 56(e)(2) and Paragraph 7(c) of the Scheduling Order, the Court deems Banner's recitation of material facts undisputed for purposes of this order. Those facts are as follows:

Mr. Blum arrived at Banner Del Webb's emergency department in the early morning of July 24, 2018, complaining of an umbilical hernia leaking clear fluid. He began receiving care roughly an hour later. (Doc. 83-3 at 3.)

Physician Assistant ("PA") Christopher Jaco evaluated Mr. Blum. According to PA Jaco's notes, Mr. Blum reported his umbilical hernia began leaking ascites earlier the prior evening. Mr. Blum exhibited no pain, redness, swelling, drainage, fever, nausea, vomiting, fever, chills, chest pain, shortness of breath, or urinary problems. PA Jaco documented Mr. Blum's symptoms and medical, family, surgical, and social history. He also performed and documented a physical examination of Mr. Blum. That examination revealed Mr. Blum was alert and in no acute distress; his respiration was unremarkable; his abdomen was soft, non-tender, and non-distended; his umbilical hernia sac had evidence of a small lesion on the underside with ascites leaking through it; he exhibited no guarding, rebound tenderness, or mass; he was negative for McBurney's sign; his bowel sounds were normal; his back was normal with normal range of motion; he was alert and oriented; he exhibited no focal neurological deficits; his speech was normal; he was cooperative, had appropriate mood and affect, and normal judgment. PA Jaco discussed the results of his examination with Mr. Blum. A catheter was attached to Mr. Blum's wound to help it drain. Mr. Blum was offered paracentesis, but he declined to undergo the procedure at that time. Attending physician Daniel Montgomery, MD supervised Mr. Blum's care. Dr. Montgomery's notes confirm that Mr. Blum was seen and evaluated by him and PA Jaco, and that Dr. Montgomery agreed with the history, assessment disposition, and plan. (*Id.* at 4-8.)

Though Mr. Blum was noted to have an abdominal wall wound, his condition was stable, so he was discharged. Upon discharge, Mr. Blum was provided with educational materials regarding his wound check; he was counseled regarding his diagnosis and treatment plan and indicated an understanding of the instructions; he agreed to return to the emergency department if his symptoms worsened; and his questions were answered. (*Id.* at 7-10.)

Mr. Blum presented to Banner Boswell Medical Center later the same day. Records from that visit again indicate a negative abdominal examination, with no signs or symptoms of infection. The treating surgeon stated Mr. Blum would need to have his umbilical hernia repaired to prevent an infection but did not believe an emergent surgery was necessary. Instead, the repair procedure was scheduled for the following day. (Doc. 83-4 at 4-5.)

As part of its defense, Banner retained emergency medicine physician Carlo Rosen, MD to offer expert opinions regarding the care provided to Mr. Blum. Dr. Rosen's is the only medical expert opinion in this case. Based on his review of the relevant medical records, Dr. Rosen opined that (1) Banner Del Webb had an appropriate EMTALA policy in place and complied with that policy in its treatment of Mr. Blum; (2) Dr. Montgomery and PA Jaco performed an appropriate medical screening examination; (3) based on that examination, it was reasonable to conclude that Mr. Blum did not have an emergency medical condition; (4) even if Mr. Blum had an emergency medical condition, the treatment provided to him was appropriate, and he was stable upon discharge; and (5) to a reasonable degree of medical probability, Mr. Blum's discharge did not cause any material deterioration of his condition, cause or contribute to the need for any additional or different treatment, or change his outcome. (Doc. 83-5.)

### III.   Analysis

Banner has satisfied the second element of the summary judgment test by showing that, based on the undisputed facts, it is entitled to judgment as a matter of law.

Congress passed the EMTALA to address concerns "that hospitals were 'dumping' patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions stabilized." *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995). The EMTALA addresses these concerns by "plac[ing] obligations of screening and stabilization upon hospitals and emergency rooms that receive patients suffering from an 'emergency medical condition.'" *Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249, 250 (1999). In particular, hospital emergency rooms have a duty to (1) screen patients for emergency medical conditions and, if one is found,

(2) stabilize patients or transfer them to a higher level of care. *Id.* at 250-51; 42 U.S.C. § 1395dd(a), (b)(1), (c)(1).

The statute defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in . . . placing the health of the individual . . . in serious jeopardy, . . . serious impairment to bodily functions, or . . . serious dysfunction of any bodily organ or part[.]" § 1395dd(e)(1). The statute further defines "to stabilize" to mean "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility," and "stabilized" to mean "that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility[.]" *Id.* at (e)(3). In the event a patient has an emergency medical condition, the EMTALA requires only stabilizing treatment; it does not require the hospital to completely alleviate the emergency condition. *See Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 415 (9th Cir. 1991).

Banner complied with its EMTALA obligations here. The undisputed evidence shows that Banner provided Mr. Blum with an appropriate medical screening, that his leaking umbilical hernia did not constitute an emergency medical condition, but that even if it did, Banner provided appropriate stabilizing treatment and discharged Mr. Blum in stable condition. Although the Blums argue otherwise, they proffer no evidence to support their claim that Banner failed to appropriately screen and stabilize Mr. Blum before his discharge from the emergency department. For this reason, summary judgment is warranted.

Before concluding, the Court finds it necessary to address one other issue. The EMTALA authorizes "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section" to bring a civil action against the participating hospital. § 1395dd(c). There are two plaintiffs in this lawsuit—

spouses Edward and Nancy Blum—but it is not clear to this Court how Mrs. Blum has standing to bring an EMTALA claim. Nowhere is it alleged that Mrs. Blum received inadequate (or any) emergency room care or suffered any injuries of her own, and the mere fact that Mrs. Blum is married to Mr. Blum does not confer on her a right to bring an EMTALA claim based on Mr. Blum's care and alleged injuries, at least while Mr. Blum is living and capable of vindicating his own rights. *See Pauly v. Stanford Hosp.*, No. 10-CV-5582-JF (PSG), 2011 WL 1793387, at *5 (N.D. Cal. May 11, 2011) ("Extending a private right of action to a third party when the individual patient is still living would result in a significant expansion of liability for hospitals subject to EMTALA's provisions."). And to the extent Mrs. Blum has been joined as a plaintiff solely to bind the marital community, her joinder is not necessary; "as a party that initiated this case—rather than a party defending against an action to enforce a debt or obligation on the community—[Mr. Blum] has the power to bind the entire community[.]" *Waesche v. Embry-Riddle Aeronautical Univ. Inc.*, No. CV-21-08020-PCT-DLR, 2021 WL 1862824, at *1 (D. Ariz. May 10, 2021). Because Mr. Blum is living and actively pursuing his own rights under EMTALA, and because Mrs. Blum does not allege any EMTALA injury personal to her, the Court finds that Mrs. Blum does not have standing to participate as a plaintiff in this case.

**IV.    Conclusion**

Banner has presented sufficient evidence that it appropriately screened Mr. Blum and stabilized him before discharge. The Blums chose not to offer any evidence contradicting Banner's contention that it complied with its EMTALA obligations. And Mrs. Blum does not have standing to bring an EMTALA claim based on her husband's treatment, at least while he is living and capable of vindicating his own rights. For these reasons,

/ / /

/ / /

/ / /

**IT IS ORDERED** that Banner's motion for summary judgment (Doc. 83) is **GRANTED** and the Blums' Motion to Proceed to Trial (Doc. 95) is **DENIED** as moot. The Clerk of the Court is directed to enter judgment accordingly and terminate this case.

Dated this 14th day of September, 2022.

_____
Douglas L. Rayes
United States District Judge